**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TILLMAN SMITH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:17-cv-02593-SPM |
| v. | ) | |
| | ) | |
| JENNIFER SACHSE, et al., | ) | |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants have moved to dismiss Plaintiffs' two-count lawsuit for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion should be denied in its entirety.

## I. INTRODUCTION

Plaintiffs Tillman Smith and Kevin Hammerschmidt (collectively, "Plaintiffs") brought this lawsuit after being retaliated against by prison officials for accessing the prison grievance process, conferring with counsel regarding the conditions of their confinement, and pursuing legal action to protect their constitutional rights. Until last fall, both Plaintiffs were incarcerated at Missouri Eastern Correctional Center ("MECC")—less than one hour from St. Louis, where Plaintiffs' undersigned counsel is located. *See* First Am. Compl. at ¶¶ 4-5, 50. Plaintiffs and other inmates at MECC are not provided with adequately private spaces for legal calls or legal visits—an environment which placed Plaintiffs at risk of retaliation by prison officials. *Id*. at ¶¶ 32-41.

Mr. Hammerschmidt remains at MECC, and has incurred harassment by prison staff on a near daily basis for exercising his constitutional rights. *Id*. at ¶¶ 5, 59-67, 72, 82. At the heart of his claims is a retaliatory search of his cell which occurred mere minutes after a telephone call with counsel regarding atrocious conditions of confinement at MECC. *Id*. at ¶¶ 60-66.

Mr. Smith has been moved from MECC to a location far away from his family and legal team. He likewise was retaliated against for consulting with counsel. Less than one week after meeting with counsel regarding the conditions at MECC, including lack of hot water in the kitchen and certain housing units, Mr. Smith was transferred over one hundred miles away, to Tipton Correctional Center ("TCC"). *Id*. at ¶¶ 42-56. This transfer was carried out in retaliation against Mr. Smith because he conferred with counsel regarding the conditions of confinement at MECC. *Id*. at ¶ 53. It has made it harder for his family and legal team to visit with him, and has disrupted the medical treatment he was receiving at MECC. *Id.* at ¶¶ 48-51, 54-55. When Mr. Smith attempted to grieve the retaliatory transfer, he was denied the necessary form. *Id*. at ¶ 56.

## II. LEGAL STANDARD

In ruling on a motion to dismiss, a district court "accepts as true all factual allegations in the claim and draws all reasonable inferences in favor of the claimant." *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted; quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations omitted).

At this stage, "'the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1976)). Plaintiffs need only provide sufficient facts to provide the grounds upon which the claims rise and to raise a right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 129 S.Ct. at 1949.

# III. ARGUMENT

## A. Plaintiffs have sufficiently stated a claim for retaliation.

Defendants argue that Plaintiffs' retaliation claim fails because they have not sufficiently alleged Defendants' took adverse action against them motivated by the exercise of constitutionally-protected activity. To the contrary, the well-pled allegations in the First Amended Complaint demonstrate that each defendant was personally involved in adverse and retaliatory actions against Mr. Smith and Mr. Hammerschmidt—acts undertaken directly in response to Plaintiffs engaging in protected activity. Assuming these facts are true for purposes of Defendants' Motion to Dismiss, Plaintiffs have stated claims upon which relief can be granted. Accordingly, Defendants' Motion should be denied.

i. <u>The unjustified cell search and retaliatory transfer constitute "adverse actions."</u>

Defendants spend three pages citing opinions that purportedly stand for the proposition that transferring an inmate or searching his cell do not constitute adverse actions. But the authority they cite is misplaced. For example, the majority of cases Defendants cite relate to due process claims, but Plaintiffs have not raised due process claims in their lawsuit.

In any event, it is immaterial whether an inmate has a constitutionally-protected liberty interest in avoiding transfer or a legitimate expectation of privacy in avoiding cell searches. As a matter of law, the adverse action itself need not be unconstitutional in order to support a retaliation claim. *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) ("the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable"); *Freeman v. Blair*, 793 F.2d 166, 178 (8th Cir. 1986) ("an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper").

And the Eighth Circuit has held expressly that "a transfer in retaliation for exercising federal constitutional rights is actionable under § 1983." *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996). *See also Sterling v. Wood*, 68 F.3d 1124, 1126 (8th Cir. 1995); *Hazen v. Reagen*, 16 F.3d 921, 925 (8th Cir. 1994); *Ponchik v. Bogan*, 929 F.2d 419 (8th Cir. 1991); *Murphy v. Missouri Dept. of Correction*, 769 F.2d 502, 503 (8th Cir. 1985). Thus, a transfer from one institution to another can constitute adverse action—and it does so here. Similarly, a cell search conducted in retaliation for an inmate exercising their constitutional rights may support an actionable claim. *See, e.g.*, *Scher v. Engelke*, 943 F.2d 921, 925 (8th Cir. 1991).

Plaintiffs have sufficiently alleged facts demonstrating they were adversely impacted by Defendants' retaliatory actions. Mr. Hammerschmidt alleges being subjected to regular harassment by prison staff at MECC. First Am. Compl. at ¶¶ 59, 67. His IRR and grievance forms attached as an exhibit to the Complaint also discuss the intimidation and harassment that he received following a call with counsel. *See* Doc. 16-4. Mr. Smith has alleged that his transfer to TCC shortly after meeting with counsel adversely impacted him because it moved him further away from his sister and primary source of support, and significantly further away from his attorneys. First Am. Compl. at ¶¶ 47-53. In addition, Mr. Smith's transfer to TCC disrupted the medical treatment and accommodations he was receiving at MECC. *Id*. at ¶¶ 54-55. These allegations, taken as true, demonstrate that the improper cell search and retaliatory transfer constitute "adverse actions."

ii. <u>Plaintiffs sufficiently allege Defendants' adverse actions were motivated by Plaintiffs' exercise of their constitutional rights.</u>

Based on the level of factual support Defendants insist Plaintiffs must provide, and the procedural posture of the cases they cite in support of their motion, Defendants appear to be asking

this Court to apply a summary judgment standard to Plaintiffs' initial pleading.[1] But unlike the parties in the opinions cited in Defendants' motion, here the parties have not yet had the benefit of discovery. They have not had an evidentiary hearing. And Defendants' motion is brought pursuant to FED. R. CIV. P. 12(b)(6), not FED. R. CIV. P. 56(a).

Therefore, although Plaintiffs will one day have to meet the burden of proof Defendants describe, at the initial pleading stage they need only state *plausible* claims for relief, and all factual allegations are assumed as true and construed in Plaintiffs' favor. *Freitas*, 703 F.3d at 438; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. The First Amended Complaint alleges sufficient facts which, assumed as true, demonstrate that retaliatory motive behind Defendants' actions.

The timing and context of Defendants' adverse acts is important. For example, Plaintiffs allege that the adverse actions were taken conspicuously close in time to conversations with counsel regarding atrocious conditions of confinement at MECC—conversations which prison staff overheard due to lack of confidential space. First Am. Compl. at ¶¶ 30-41, 44, 60-67. Mr. Smith was transferred less than one week after meeting with counsel. *Id.* at ¶ 46. This occurred despite the fact that, up until that point, he had been told that he would remain at MECC for the rest of his sentence—and despite the fact that Mr. Smith made clear he did not wish to move facilities because of MECC's convenience for family visits. *Id.* at ¶ 47.

Mr. Hammerschmidt's cell was searched mere minutes after a phone call with legal counsel—and after Mr. Hammerschmidt expressed sincere concerns about the confidentiality of the telephone call. *Id.* at ¶¶ 62-64. Mr. Hammerschmidt has never been written up for bringing

---

[1] *See, e.g.*, Mot. at 6-7 (citing *Wise v. Oglesby*, 2007 WL 5022104, *13 (W.D. Ark. Nov. 7, 2007) (complaint dismissed per report and recommendation of magistrate judge following evidentiary hearing); *Wilson v. Northcutt*, 441 F.3d 586, 593 (8th Cir. 2006) (order on motion for summary judgment affirmed in part, and reversed in part); *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (affirming order on summary judgment).

contraband into MECC; to the contrary, his professors at Washington University's Prison Education Project describe Mr. Hammerschmidt as "an excellent, dedicated, motivated student with a strong academic record and a flawless behavioral history." *Id*. at ¶¶ 58, 64-65. Yet Mr. Hammerschmidt is subjected to harassment by prison officials on a regular and ongoing basis. *Id*. at ¶¶ 59, 67.

Defendants try to cast Plaintiffs' claims as being supported by no more than bad timing. *See* Mot. at 6. But the acts complained of are more than mere coincidence in timing, and the temporal proximity between Plaintiffs' protected activity and Defendants' acts of retaliation are not the only facts alleged from which Defendants' retaliatory motive may be inferred. For example, Mr. Smith alleges he was told that he would remain at MECC, and informed his case worker he did not want to move facilities because of MECC's relative convenience for family visits. First Am. Compl. at ¶ 47. Yet less than one week after meeting with counsel he was on his way across the state. *Id*. at ¶ 46. Counsel alerted Warden Sachse to this retaliatory transfer and the adverse impact it would have on Mr. Smith, and asked that she withdraw the transfer, but she did not do so. *Id*. at ¶ 48. Furthermore, he was thereafter blocked from grieving the retaliatory transfer when an IRR form was denied to him. *Id*. at ¶ 56.

Not only was Mr. Hammerschmidt's cell tossed in retaliation within minutes of a call with counsel, but Defendant Mundwiller overhead Mr. Hammerschmidt mention his name during the call with counsel. *Id*. at ¶ 61. And Mr. Hammerschmidt informed Defendants Mundwiller, Diener, and/or Rajput about his concerns regarding the confidentiality of that legal call. *Id*. at ¶ 62. This knowledge of Mr. Hammerschmidt's call with counsel, wherein he discussed conditions of confinement at MECC and Mr. Mundwiller personally, combined with a baseless cell search—

that resulted in no contraband being found—mere minutes after conclusion of the call, sufficiently support an interference of retaliatory motive on behalf of the Defendants.

These allegations—taken as a whole and assumed as true—are sufficient to establish Defendants' retaliatory motive. They are certainly more than the threadbare recitations discouraged by *Iqbal*, 556 U.S. at 678. Again, the vast majority of the cases cited by Defendants were decided on summary judgment or after the benefit of an evidentiary hearing —cases where the plaintiffs had a chance to conduct discovery and develop a factual record in support of their retaliation claims. *See supra* at n1. Plaintiffs have alleged sufficient facts to state viable retaliation claims, and likewise deserve the opportunity to reach the merits of their claims.

### B. Plaintiffs sufficiently allege Defendants' personal involvement in the retaliatory acts.

In addition to four Doe Defendants, Plaintiffs have named several individuals directly responsible in some way for the acts of retaliation against Mr. Hammerschmidt and/or Mr. Smith: Jennifer Sachse (Warden at MECC), Alana Boyles (Division Director, Division of Adult Institutions), Joseph Mundwiller (FUM at MECC), Courtney Diener f/k/a Courtney Estes (Case Manager at MECC), Atif Rajput (Case Manager at MECC), Theresa Hill (Case Manager at MECC), and Joseph Pierce (CO I at MECC). *See* First Am. Compl. at ¶¶ 6-15. The facts in Plaintiffs' First Amended Complaint sufficiently demonstrate each Defendant's personal involvement in the acts complained of.

Mr. Smith alleges Defendants Sachse, Mundwiller, Diener, Rajput and Hill were involved in his retaliatory transfer to TCC. *Id*. at ¶ 46. Plaintiffs further allege that one of Defendant Sachse's responsibilities as Warden of MECC is approving transfers of inmates into and out of MECC. *Id*. at ¶ 6. And Plaintiffs' counsel alerted Warden Sachse to the retaliatory and adverse nature of the transfer when it was still pending, asking her to withdraw the transfer, but she refused to do so. *Id*.

at ¶ 48. Mr. Hammerschmidt alleges Officer Pierce ransacked his cell, at the direction of Defendants Sachse, Mundwiller, Diener, and/or Rajput. *Id*. at ¶ 63. And he specifically grieved against Defendants Mundwiller, Pierce, and Rajput. *See* Doc. 16-4. These allegations sufficiently establish each Defendant's personal and direct involvement in the constitutional violations that form the basis for Counts I and II.

Defendants argue that Plaintiffs' claims should be dismissed because supervisory prison officials (Defendants Sachse and Boyles) cannot be held vicariously liable for other prison officials' conduct. Plaintiffs are fully aware that the doctrine of *respondeat superior* does not apply to Section 1983 cases. Yet a supervisor may still be liable under Section 1983—even if they are not involved in day-to-day operations—if, for example, the supervisor is involved in "'creating, applying, or interpreting a policy' that gives rise to unconstitutional conditions." *Jackson v. Nixon*, 747 F.3d 537 (8th Cir. 2014) (quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009)).

Here, Plaintiffs have alleged that Defendants Sachse and Boyles, named in their official capacities only, are responsible for, *inter alia*, control and management of MECC and ensuring inmates at MECC are provided confidential spaces to meet or speak with legal counsel. First Am. Compl. at ¶¶ 6-7. Sachse and Boyles have authority to create, change, apply, and/or interpret policies and practices related to or governing legal visits and legal calls. *Id*. at ¶ 40. This authority is, at least in part, statutorily-derived. *See* RSMo. §§ 217.160, 217.170, and 217.175.

But Defendants Sachse and Boyles failed to implement and enforce adequate policies, procedures, or regulations to ensure that inmates are able to communicate confidentially with their counsel or prospective counsel. First Am. Compl. at ¶¶ 41, 73, 83. Instead, inmates at MECC must meet with their counsel in an open visiting area, with a guard close by, or in a parole hearing room with an officer stationed directly outside the door, within earshot. *Id*. at ¶¶ 32-33. If an inmate at

MECC wants to confer with counsel by phone, he must do so in the case managers' office—surrounded by other inmates or MDOC staff—or in a hallway or in housing units alongside other inmates conducting their own personal calls. *Id*. at ¶ 37.

Sachse and Boyles knew or reasonably should have known about the lack of a confidential setting for legal visits or legal telephone calls at MECC, and the substantial risk of constitutional harm to inmates at MECC (including Plaintiffs), resulting from the lack of such confidential spaces, but failed to take appropriate action. *Id*. at ¶ 39, 73, 83. As a result, they created or contributed to unconstitutional conditions at MECC, which exposed Plaintiffs to substantial risk of constitutional harm, including the acts of retaliation alleged in the Complaint. *Id*. at ¶¶ 41, 73, 83.

In other words, Defendant Sachse and Boyles are directly responsible for creating and failing to fix an environment where inmates face a real and substantial risk that their private attorney-client communications are not, in fact, private, exposing them to retaliation by prison staff. These allegations are sufficient to demonstrate Defendants' direct and personal involvement in the acts of retaliation against Mr. Smith and Mr. Hammerschmidt.

**C. Plaintiffs' claims are not barred by Defendants' purported immunity defenses.**

Defendants make three separate immunity-based arguments, none of which warrant dismissal of Plaintiffs' claims for the reasons discussed below.

i. <u>Plaintiffs' claims for injunctive relief are not barred by sovereign immunity.</u>

Defendants erroneously claim that Plaintiffs cannot bring claims against any of the named defendants in their official capacities because that would amount to a suit against the State, which is barred by the Eleventh Amendment.

"The Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64,

68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155-56, 159 (1908)); *see also Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 n4 (8th Cir. 1995) (citing with approval *Ex parte Young* exception to the Eleventh Amendment); *Treleven v. Univ. of Minnesota*, 73 F.3d 816, 819 (8th Cir. 1996) (State officials are "persons" under § 1983 when sued for injunctive relief because such actions "are not treated as actions against the State.") (citations omitted).

Here, Plaintiffs seeks both damages and injunctive relief. Intimidation and harassment against Mr. Hammerschmidt is continuous and ongoing. *See* First Am. Compl. at ¶¶ 59, 67. Mr. Smith remains at TCC, far from his family and legal team, and without adequate medical care or accommodations. *Id*. at ¶¶ 4, 53-55. Plaintiffs have named Defendants in their official capacities because they seek prospective injunctive relief to remedy these ongoing harms. For example, Plaintiffs seek an order commanding Defendants to make confidential spaces available for legal calls and legal visits, and an injunction barring Defendants from retaliating against them for exercise of their constitutional rights. *See id.* at 16, 18. Plaintiffs' claims for injunctive relief against Defendants in their official capacities are not barred by the Eleventh Amendment.

ii. Plaintiffs have a clearly-established right to be free from retaliation for exercising their constitutional rights, and Plaintiffs' claims are not barred by qualified immunity.

Nor are Plaintiffs' claims barred by qualified immunity. As Defendants state in their Motion, courts typically examine two questions in determining whether defendants are entitled to qualified immunity: (1) whether the facts alleged, construed in the light most favorable to Plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established "such that a reasonable official would have known that his actions were unlawful." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). Although they again fail to make the distinction between the different forms of relief Plaintiffs seek, presumably Defendants only make this argument on behalf of Defendants Mundwiller, Diener, Rajput, Hill, and Pierce, as

Defendants Sachse and Boyles are named in their official capacities only. *See* First Am. Compl. at ¶¶ 6-15.

As discussed above, Plaintiffs have alleged sufficient facts demonstrating violation of their constitutional rights. Specifically, they have stated claims that Defendants Mundwiller, Diener, Rajput, Hill, and Pierce unlawfully retaliated against them for engaging in protected activity, including seeking the assistance of legal counsel. The only question left to be answered, then, is whether Plaintiffs' right to seek legal assistance and be free from retaliation for doing so was clearly established as of September 2015 "such that a reasonable official would have known that his actions were unlawful." *Krout*, 583 F.3d at 564.

"The law making retaliation for the exercise of a constitutional right actionable under § 1983 has been established for some time and an objectively reasonable official could not fail to know of it." *Scher v. Engelke*, 943 F.2d 921, 925 (8th Cir.1991), *cert. denied*, 503 U.S. 952 (1992) (citing *Freeman v. Blair*, 862 F.2d 1330, 1332 (8th Cir. 1988) (citing *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 283–84 (1977); *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir.1978*), cert. denied*, 440 U.S. 916 (1979))).[2] Thus, an objectively reasonable officer would have

[2] *See also, e.g., Tarpley v. Stepps*, No. 405-CV-573 CAS, 2007 WL 844826, at *8 (E.D. Mo. Mar. 19, 2007) (affirming right against retaliation for protected activity clearly established); *Royal v. Kautzky*, 375 F.3d 720, 722 (8th Cir. 2004) (prisoner's First Amendment rights were violated when he was placed in administrative segregation for sixty days after making numerous complaints and grievances); *Trobaugh v. Hall*, 176 F.3d 1087, 1088-89 (8th Cir. 1999) (prisoner's First Amendment right to petition for redress was violated when he was placed in administrative segregation for three days in retaliation for having filed grievances); *Williams v. Dep't. of Corrn.*, 208 F.3d 681 (8th Cir. 2000) (inmate stated retaliation claim against correctional officers by alleging they placed leg irons too tightly on him because of their displeasure with his participation in a trial); *Goff v. Burton*, 7 F.3d 734, 736-37 (8th Cir. 1993) (prison officials may not transfer an inmate to another institution in retaliation for inmate's filing of legal actions), *cert. denied*, 512 U.S. 1209 (1994); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990) (prison officials may not block reclassification opportunities or worsen plaintiffs' living and working conditions in retaliation for their litigation activities); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)

known that transferring Mr. Smith across the state in response to his conferring with legal counsel is unlawful. And an objectively reasonable officer would have known that ransacking Mr. Hammerschmidt's cell in response to his conferring is unlawful. To suggest otherwise runs contrary to well-established law, and is contradicted by the facts alleged in the Complaint, which demonstrate that Defendants were personally involved in the alleged acts of retaliation, and knew their acts were unlawfully retaliatory. *See* First Am. Compl. at ¶¶ 39-41, 46-48, 60-67, 73, 75-76, 83, 85-86.

iii. Plaintiffs' Count II is not barred by official immunity.

In Defendants' final immunity-based argument, they claim that Plaintiffs' state law claim is barred by the doctrine of official immunity. Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts," but not those performed in a ministerial capacity. *Southers v. City of Farmington*, 263 S.W.3d 608, 610 (Mo. banc 2008) (citations omitted).

"[T]he decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policy making or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." *Geiger v. Bowersox*, 974 S.W.2d 513, 517 (Mo. App. E.D. 1998) (quoting *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985)); *see also Tarpley*, No. 405-CV-573 CAS, 2007 WL 844826, at *9 ("Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required to carry it out."). A discretionary act requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act

(filing of a disciplinary charge against a prisoner in retaliation for his having filed a grievance pursuant to established procedures is actionable under § 1983).

should be done or a course pursued." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. banc 1984) (quoted case omitted).

The facts of this case are distinguishable from those cited by Defendants. In *Kanagawa* the plaintiff sought damages against the director of MDOC and the prison facility alleging they were negligent in allowing a prisoner to escape. 685 S.W.2d 831. The Court emphasized that, as ranking officials in the state correctional system, those defendants were responsible for, among other things, designing policies and standards for prison security—decisions which necessarily involved the exercise of a substantial degree of judgment. *Id.* at 836-37. *Southers* entailed claims against a city and police officers related to a traffic collision following an emergency pursuit. 263 S.W.3d 603. In applying official immunity protection to the police officer defendants, the court relied upon case law which holds that the official immunity doctrine applies to officers responding to an emergency, but not officers responding to non-emergencies, because of the discretion and judgment required in the former setting. *Id*. 263 S.W.3d at 618-19.

Unlike designing policies and standards for prison security or engaging in hot pursuit conducting cell searches and requesting or facilitating transfers between prison facilities are ministerial functions. Such duties are more akin to conducting strip searches (*Tarpley*, No. 405-CV-573 CAS, 2007 WL 844826, at *9), or maintaining and administering inmates' prescriptions (*Geiger*, 974 S.W.2d at 517), in that they are directed by prison policy, do not require a discretionary judgment call, and do not involve policymaking or other exercise of professional judgment or expertise. As a result, Defendants are not shielded from liability from Plaintiffs' state-law claim on the basis of official immunity.

Even assuming, *arguendo*, the Court found that official immunity applies to Defendants' acts alleged in the Complaint, it does not fully bar Plaintiffs' state-law claim. Official immunity is

a qualified immunity, and does not apply to those discretionary acts undertaken in bad faith or with malice. *Southers*, 263 S.W.3d at 612 ("official immunity will not apply to conduct that is willfully wrong or done with malice or corruption"); *Davis v. Bd. of Educ. of City of St. Louis*, 963 S.W.2d 679, 688 (Mo. App. E.D. 1998) ("official immunity is a qualified immunity and does not apply to those discretionary acts done in bad faith or with malice"). No one has discretion to willfully violate the Constitution. And Plaintiffs specifically allege that Defendants' acts and omissions were undertaken with malice and/or reckless disregard for Plaintiffs' constitutional rights. *See* First Am. Compl. at ¶¶ 76, 86.[3]

### D. Plaintiff Smith exhausted his *available* administrative remedies prior to filing suit.

Defendants argue that Mr. Smith's claims should be dismissed for failure to exhaust his administrative remedies, as required by the PLRA. This argument does not warrant dismissal of Mr. Smith's claims because Defendants actively impeded or blocked his ability to exhaust the IRR and grievance process.

The PLRA provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. §1997e(a) (emphasis added). As the United States Supreme Court has explained, "the ordinary meaning of the word "available" is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (internal citations omitted). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some

[3] In any case, immunity certainly does not exist here as a matter of law, and at the very least the Court should deny Defendants' Motion to Dismiss on this point, permit the case to proceed to its merits and discovery, and decide the issue another day with the aid of a full record.

relief for the action complained of.'" *Ross*, 136 S.Ct. at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

When prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the administrative process become, practically speaking, unavailable. *Ross*, 136 S. Ct. at 1860. Under such circumstances, Section 1997e(a) poses no bar to suit. *Id.*; *see also Miller v.* Norris, 247 F.3d 736 (8th Cir. 2001) (administrative remedy that a prisoner is prevented from using is not available for purposes of the exhaustion requirement of section 1997e); *Hause v. Smith*, No. 05-4381-CV-C-NKL, 2006 WL 2135537, at *2 (W.D. Mo. July 31, 2006) (allegations that plaintiff's attempts to file grievances were significantly thwarted sufficient to infer that the administrative process was unavailable); *Jones v. Corizon Med. Servs.*, No. 1:16-CV-55 SNLJ, 2017 WL 2403750, at *2 (E.D. Mo. June 2, 2017) (denying summary judgment on exhaustion grounds where defendants presented no evidence refuting plaintiff's claim he lacked access to the required grievance form, rendering the administrative remedy unavailable under the PLRA).

Mr. Smith requested an IRR form to grieve his retaliatory transfer. First Am. Compl. at ¶ 56. The form was denied to him. *Id*. Because prison staff actively prevented Mr. Smith from grieving the transfer, any administrative remedy was effectively unavailable to him. Therefore, the fact that he did not file an IRR, grievance, or grievance appeal does not bar his claims.

**E. Count II should survive because it seeks equitable relief only.**

Finally, Defendants argue that Plaintiffs' state-law claim should be dismissed because "there is no cause of action in Missouri for violations of the State Constitution." Mot. at 16. It is important to clarify that in Plaintiffs' state-law claim (Count II), they seek only prospective injunctive relief—not monetary damages. Defendants ignore this critical distinction.

It is true that Missouri law does not provide a vehicle for recovering monetary damages for violation of the Missouri Constitution's guarantee of a right to free speech. *See Moody v. Hicks*, 956 S.W.2d 398, 402 (Mo.App.1997) (discussing the due process and equal protection clauses of the Missouri Constitution); *Gash v. Lafayette Cty.*, No. WD65589, 2007 WL 324589, at *14 (Mo. Ct. App. Feb. 6, 2007), trans to Mo. S. Ct., *Gash v. Lafayette Cty.*, 245 S.W.3d 229 (Mo. banc 2008) (discussing the search and seizure clause of the Missouri constitution).

But Missouri law does not similarly bar claims for equitable relief based on violations of the Missouri Constitution. In *Strinni v. Mehlville Fire Prot. Dist.*, 681 F. Supp. 2d 1052 (E.D. Mo. 2010), for example, the petitioner pleaded both federal and state free speech constitutional violations. There the court denied the defendants' motion for summary judgment as to state and federal free speech and free association claims on the same basis, noting the assumed similarity in the state constitutional and federal constitutional free speech and free association protections." *Strinni*, 681 F. Supp. 2d at 1078–79. In so doing, the court implicitly acknowledged the existence of an equitable claim for violation of one's rights under the Missouri constitution.

Even the opinions cited by Defendants on this point restrict their analysis to suits for monetary damages—not equitable relief. *See Moody*, 956 S.W.2d at 402 ("Plaintiff acknowledges no Missouri precedent exists permitting *suits for monetary damages* by private individuals resulting from violations of the Missouri Constitution.") (emphasis added); *Collins-Camden Partnership, L.P. v. County of Jefferson*, 425 S.W.3d 210, 214 (Mo. App. E.D. 2014) ("No Missouri precedent exists permitting *suits for monetary damages* by private individuals resulting from violations of the Missouri Constitution.") (emphasis added); *Johnson v. City of Hazelwood*, Nos. 4:14CV286 SNLJ, 4:14CV1311 SNLJ, 2014 WL 7338811, *5 (E.D. Mo. Dec. 22, 2014) (same).

Plaintiffs do not seek monetary damages as a result of violations of their rights under the Missouri Constitution. They seek only prospective injunctive relief. Therefore, they have stated a claim for violation of their constitutional rights, and Count II should not be dismissed.

**IV.CONCLUSION**

Plaintiffs filed this suit because they were retaliated against by prison officials simply for pursuing their constitutional right to consult with counsel or access the prison grievance process. Despite knowing about the lack of confidential settings for legal calls or legal visits at MECC, defendants Sachse and Boyles failed to implement and enforce adequate policies, procedures, or regulations to ensure that inmates—including Plaintiffs—are able to communicate confidentially with their counsel or prospective counsel. As a result, Plaintiffs have no choice but to confer with counsel in an environment that exposes them to a real and substantial risk of retaliation by prison staff.

Plaintiffs have alleged sufficient facts to support both claims of retaliation—including facts which demonstrate each Defendant's personal involvement in the retaliatory acts. Plaintiffs' claims are not barred by sovereign immunity, qualified immunity, or official immunity. Contrary to Defendants' argument, Mr. Smith exhausted all available administrative remedies prior to filing suit. And, finally, Plaintiffs' claim for violation of the Missouri Constitution should survive because there is no law prohibiting such equitable claims. For these reasons discussed above, Defendants' Motion to Dismiss should be denied and Plaintiffs should be permitted to proceed to the merits of their claims.

Dated: November 30, 2017

Respectfully submitted,

By: /s/ Amy E. Breihan

Mae C. Quinn, #61584
Amy E. Breihan, #65499MO
RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER AT ST. LOUIS
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Telephone: (314) 254-8540
Facsimile: (314) 254-8547
mae.quinn@macarthurjustice.org
amy.breihan@macarthurjustice.org

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically and served by operation of the CM/ECF system on all counsel of record on November 30, 2017.

By: /s/ Amy E. Breihan