UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TILLMAN SMITH, et al., | ) |
| | ) |
| Plaintiffs[1], | ) Case No. 4:17-CV-2593 SPM |
| | ) |
| v. | ) |
| | ) |
| JENNIFER SACHSE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss filed by Defendants (Doc. 17). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. (Doc. 45). For the reasons stated below, the Defendants' motion will be granted in part and denied in part.

### BACKGROUND

Kevin Hammerschmidt, Plaintiff in this prisoner civil rights action, is currently incarcerated in the Missouri Department of Corrections ("MDOC") and confined in Missouri Eastern Correctional Center ("MECC"). Plaintiff alleges that Defendants have retaliated against him for using the prison grievance processes and for pursuing legal action to protect his constitutional rights. Plaintiff asserts that Defendants have intimidated, obstructed, threatened, and harassed him as well as other prisoners who file grievances, meet with attorneys, or otherwise exercise their rights. He also alleges that Defendants have failed to provide confidential and private spaces for inmates to have legal telephone calls or visits with their attorneys. He brings this 42 U.S.C. § 1983 action against Defendants Jennifer Sachse, the

---

[1] Plaintiff Tillman Smith brought similar retaliation claims against Defendants, but dismissed his claims without prejudice when he was released from confinement. (Doc. 42). The sole remaining Plaintiff in this action is Kevin Hammerschmidt.

Warden at MECC, and Alana Boyles, the Division Director of the Division of Adult Institutions, in their official capacities only, and against Joseph Mundwiller, Courtney Diener f/k/a/ Estes, Atif K. Rajput, and Jeff D. Pierce in their official and individual capacities. Defendants are employees of the Missouri Department of Corrections. Defendant Boyles is responsible for the management of Missouri's twenty-one state prisons, including MECC, and is responsible for making rules, regulations, and orders necessary for the management of those facilities, and allegedly is responsible for ensuring that inmates at those facilities are provided with confidential spaces where they may speak with legal counsel. Defendant Sachse, as Warden of MECC, is responsible for the general welfare of individuals incarcerated at MECC, and allegedly is responsible for ensuring inmates at MECC are provided confidential spaces to speak with legal counsel. Defendant Mundwiller is a Functional Unit Manager at MECC, and is responsible for managing, supervising and training the staff in his unit. Defendants Diener and Rajput are case managers at MECC, and in that capacity are responsible for, among other things, making recommendations concerning disciplinary actions, and acting as grievance officers. Defendant Pierce is a Corrections Officer at MECC, and is responsible for, among other things, searching incarcerated individuals, buildings, and grounds for contraband.

In his First Amended Complaint, Plaintiff asserts in Count I a retaliation claim in violation of the First and Eighth Amendments of the United States Constitution, and in Count II a retaliation claim in violation of Article I, Section 8, of the Missouri Constitution. (Doc. 16). As relief, Plaintiff requests an injunction barring Defendants from retaliating against him for the exercise of his First Amendment rights; an order commanding Defendants to make confidential spaces available for telephone calls and visits with legal counsel; an award of nominal and punitive damages against Defendants Mundwiller, Diener, Rajput, and Pierce; and an award of costs of this suit, attorneys' fees, and litigation expenses pursuant to 42 U.S.C. § 1988.

Defendants move to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 17). Defendants also raise the defenses of sovereign and qualified immunity, and assert that Plaintiff's claims under the Missouri Constitution are not legally cognizable.

**FACTS AS ALLEGED**

Plaintiff is known to be an active advocate for himself and other prisoners in the MDOC system. He is a member of the advisory board of Missouri CURE (Citizens United for the Rehabilitation of Errants), a criminal justice reform organization. He is also enrolled in the Washington University Prison Education Project, and has been described by the directors of that program as having "a flawless behavioral history," and being the "soul of the program." (Doc. 16-3). The principal incident that forms the basis of Plaintiff's claims occurred on September 19, 2016. On that day, Plaintiff consulted with his attorney by telephone concerning the conditions of confinement at MECC. The facility had been without hot water in the kitchen and certain housing units for several months, and Plaintiff was concerned about the unsanitary conditions resulting from the lack of hot water. Because MECC does not provide a private area for attorney-client visits or telephone calls, multiple correctional officers were in the vicinity during the call, and could have overheard the contents of the conversation. Defendant Mundwiller was standing near Plaintiff during the call and overheard Mr. Hammerschmidt mention his name to counsel. After the call ended, Plaintiff expressed concerns about the confidentiality of the attorney-client telephone call to Defendants Mundwiller, Diener, and Rajput. Mere minutes after the call concluded, Defendant Pierce, at the direction of Defendants Sachse, Mundwiller, Diener, and Rajput, ransacked Plaintiff's cell in a purported search for contraband. Plaintiff had never before been accused of bringing contraband into MECC, and no contraband was discovered during the search that day. Plaintiff asserts that the search was conducted in retaliation against him for

"being a squeaky wheel," due to his efforts to assert his constitutional rights. (Doc. 16 at 14). Plaintiff alleges that he has experienced similar harassment and retaliation on an ongoing basis since the incident in September 2016, and that shortly after filing this complaint his cell was again ransacked without justification.

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

### I. Legal Standard

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc*. 380 F.3d 316, 317 (8th Cir. 2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her

claim. *See Schuer v. Rhodes*, 416 U.S. 232, 236 (1976) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

In civil rights actions, a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss. *See Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). Moreover, the reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, though it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679); *see also Braden v. Walmart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). A motion to dismiss should not be granted merely because a complaint does not state with precision every element of the offense necessary for recovery. *Roberts v. Walmart Stores, Inc.*, 736 F.Supp. 1527, 1528 (E.D.Mo. 1990). "A complaint is sufficient if it contains allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." *Id*.

**II.    Retaliation Claim**

To state a First Amendment claim of retaliation, a plaintiff must allege that (1) he exercised a constitutionally protected right, (2) a governmental official took adverse action against him, and (3) the adverse action was motivated at least in part by the exercise of the constitutional right. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). The First Amendment right to petition for redress of grievances protects not only an inmate's right of access to the

courts, but also the right to seek redress under established prison grievance procedures. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1994). Retaliation against a prisoner for utilizing the prison grievance system or conferring with one's attorney "strikes at the heart of an inmate's constitutional right to seek redress of grievances." *Dixon v. Brown*, 38 F.3d 379, 370 (8th Cir. 1994).

Defendants assert that Plaintiff has not adequately stated a retaliation claim because "searching an inmate's cell do[es] not constitute an 'adverse action.'" (Doc. 22 at 3). Defendants argue that because an inmate has neither a legitimate expectation of privacy in his prison cell, nor a protected right to avoid cell searches by prison staff, a cell search cannot constitute an adverse action. Defendants repeatedly characterize the issue as whether searching an inmate's cell violates that inmate's constitutional rights. That is a red herring. It is immaterial whether a cell search, standing alone, violates a constitutional right, or whether an inmate has a legitimate expectation of privacy in his cell. The question is whether conducting such a search *in retaliation* for the exercise of a constitutional right is actionable. The answer to that question is yes. "An act taken in retaliation for the exercise of a constitutionally protected right under § 1983 is actionable even if the act, when taken for a different reason, would not have been actionable." *Williams v. Department of Corrections*, 208 F.3d 681, 681 (8th Cir. 2000); *see also Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) ("the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable"); *Freeman v. Blair*, 793 F.2d 166, 178 (8th Cir. 1986 ("an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper").

Defendants also assert that Plaintiff fails to state a claim because Plaintiff has not alleged "facts demonstrating that Defendants possessed the requisite retaliatory motive." (Doc. 22 at 5). The Court disagrees. While a bald assertion of retaliation is generally insufficient to state a claim

for relief, *Taylor v. Combs*, No. 07-4060-CV-C-SOW, 2008 WL 4151416, at *2, (W.D. Mo July 31, 2008), such is not the case here. Plaintiff alleges that his cell was searched mere minutes after a telephone call with his legal counsel, and after he had expressed concerns about the confidentiality of the telephone call. (Doc. 16 at 13-14). Courts "look to the chronology of events alleged by the plaintiff to determine whether retaliation may be inferred." *Id*. The temporal proximity between the telephone call and the cell search is sufficient to give rise to an inference of retaliation in this instance. To ultimately succeed on his claim, Plaintiff must prove that retaliation was "the actual motivating factor" for the adverse action, but at this early stage of the proceedings, the Court finds that Plaintiff has adequately alleged a retaliatory motive on the part of Defendants. *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). Taking Plaintiff's allegations as a whole, and in the light most favorable to him, the Court finds that he has sufficiently pleaded a cause of action for retaliation.

### III. Personal Involvement of Movants

Defendants also argue that Plaintiff's retaliation claim fails because Plaintiff has not sufficiently alleged each Defendant's personal involvement in any retaliation. Defendants further argue that, with respect to Defendants Sachse and Boyles, MECC's Warden and Division Director respectively, Plaintiff attempts to hold them liable "based solely upon their administrative or supervisory positions within the Department of Corrections." (Doc. 22 at 9). To state a claim under § 1983, a plaintiff must plead the personal involvement of each government official who has allegedly violated the plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 676.

Plaintiff alleges that Defendant Mundwiller was standing near him when he spoke to his attorney on the telephone about conditions in the prison, and that he heard Plaintiff say his name. (Doc. 16 at 13). He also alleges that he expressed his concerns about the lack of confidentiality

to Defendants Mundwiller, Diener, and Rajput before his cell was searched. *Id*. at 13. Plaintiff further alleges that Defendant Pierce personally ransacked his cell mere minutes after this telephone call, at the direction of Defendants Sachse, Mundwiller, Diener, and Rajput. *Id*. at 5 and 14. Plaintiff subsequently filed an informal resolution request (a prison grievance form) concerning the actions of Mundwiller, Diener, and Rajput, and Plaintiff alleges that he has been subjected to ongoing harassment and intimidation since the incident. (Doc. 16-4). These allegations sufficiently establish the personal and direct involvement of Defendants Sachse, Mundwiller, Diener and Rajput in the constitutional violations that form the basis of Plaintiff's complaint.

With respect to Defendant Boyles, Defendants contend that Plaintiff has alleged nothing more than her vicarious liability for the alleged constitutional violation, and that such allegation is without merit because § 1983 liability may not be based on the doctrine of *respondeat superior*. *See Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1996). Defendants correctly note that under § 1983, a supervisor generally cannot be held liable *solely* for the actions of her employee. *Rubek v. Barnhart*, 814 F.2d 1283, 1284 (8th Cir. 1987) (citations omitted). Rather, some personal involvement on the part of the defendant must be alleged.

A supervisory defendant may be personally involved in a constitutional deprivation within the meaning of § 1983 in several ways. "[A] supervisor may be held liable under section 1983 for the unconstitutional conduct of his subordinates in four situations: (1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred." *B.J.G. v. St. Charles Cnty. Sheriff*, No. 4:08CV1178-CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010)

(citations omitted); *see also Jackson v. Nixon*, 747 F.3d 537, 544 (8th Cir. 2014) (internal quotation marks and citations omitted) (a supervisor's personal involvement may be found if she was involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions). "Proof of actual knowledge of constitutional violations is not an absolute prerequisite for imposing supervisory liability." *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) (noting that the Eighth Circuit has consistently held that reckless disregard on the part of a supervisor will suffice to impose liability). Additionally, "for a supervising officer to be liable under § 1983 . . . the supervisor must have demonstrated deliberate indifference or tacit authorization of the offensive acts." *Doe HM v. City of Creve Coeur, MO.*, 666 F.Supp.2d 988, 997 (E.D. Mo. 2009). Finally, the supervising defendant's failure to implement proper policies and procedures must be the proximate cause of the complained of injury. *Parrish v. Bell*, 594 F.3d 993, 1002 (8th Cir. 2010).

The Eighth Circuit has held that an allegation that a Department of Corrections director authorized an unconstitutional policy may be sufficient to state a claim against the director for actions taken directly by others. *See Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1983). They have similarly held that "[t]he authority of the state DOC director to make prison-wide policy decisions may be sufficient to give rise to liability under § 1983." *Jackson,* 747 F.3d at 543. "Thus, it appears that the Eighth Circuit countenances a . . . § 1983 claim against a prison system director for authorizing an unconstitutional policy or procedure in a manner that suggests that *respondeat superior* is allowed in some narrow way." *Richman v. Missouri Dept. of Corr.*, No. 1:15-CV-63-SNLJ, 2017 WL 3478780, at *3 (E.D. Mo. August 14, 2017).

Plaintiff has alleged that Boyles is responsible for "making and implementing rules, regulations, and orders necessary and proper for the management" of MDOC prison facilities, "and for ensuring inmates at those facilities are provided confidential spaces to meet or speak

with legal counsel." (Doc. 16 at 3). Plaintiff also alleges that Boyles, "in failing to take action or implement adequate policies, procedures, or regulations to ensure that inmates are able to communicate confidentially with their counsel, created unconstitutional conditions wherein attorney-client communications could be overheard, resulting in the aforementioned acts of retaliation by staff," and that Defendant's actions "were the direct and proximate cause of the alleged retaliation." *Id*. at 15 and 17. Plaintiff further alleges that Boyles was aware of the retaliation, was deliberately indifferent to such conduct, and acted with reckless disregard for Plaintiff's constitutional rights. *Id* at 15.

Although the exact role of Defendant Boyles is unclear at this early stage of the litigation, the Court finds that Plaintiff has adequately alleged that she was partially responsible for the policy decisions that resulted in MECC inmates having no private space to confer with attorneys. This resultant lack of privacy allowed Plaintiff's conversation with his attorney to be overheard by prison staff, and was, Plaintiff alleges, the proximate cause of the asserted retaliation. Foreseeability is the touchstone of proximate cause, and the Court finds it plausibly foreseeable that a prison employee may retaliate against an inmate upon overhearing him discuss with his attorney certain grievances about the prison or its staff. Finally, and most saliently, Plaintiff alleges that Defendant Boyles was aware of the retaliation, and was deliberately indifferent to the same. Perhaps none of these allegations, standing alone, would sufficiently give rise to a colorable claim of retaliation against Defendant Boyles. However, when taken in combination and construed in the light most favorable to Plaintiff, the Court finds that these allegations sufficiently allege the personal involvement of Defendant Boyles, and that is all that is required at this early stage of the proceedings.

## IV. Qualified Immunity

Defendants also assert that Plaintiff's § 1983 claim is barred by the doctrine of qualified immunity. The doctrine of qualified immunity exists to "protect public officers from liability for the exercise of discretion in performing a public duty; it reflects a decision that the public is better served by public officials who will not be deterred by fear of liability from executing the office with an independent and decisive judgment." *In re Scott County Master Docket*, 672 F.Supp. 1152, 1172 (D.Minn. 1987). "Qualified immunity may protect government officials from liability under 42 U.S.C. § 1983, but not if their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Nelson v. Corr. Med. Servs.,* 583 F.3d 522, 527 (8th Cir. 2009) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

In analyzing qualified immunity claims, a court considers two questions: (1) whether the facts that a plaintiff has alleged or shown, when viewed in the light most favorable to plaintiff, support a finding that a defendant's conduct violated a constitutional right; and (2) whether that constitutional right was "clearly established" such that a reasonable official would have known that his or her actions were unlawful. *Nelson*, 583 F.3d at 528 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotation marks and citation omitted).

It is well-settled that a prisoner has a First Amendment right to petition the government to redress his grievances, whether through the prison grievance system or the courts, and prison officials are precluded from penalizing a prisoner for exercising those rights. *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452

(8th Cir. 1989). Moreover, an action by a prison official "in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper." *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990 (quotation and citations omitted).

Thus, with regard to the instant case, Plaintiff's constitutional right to seek redress for his prison grievances without retaliation was clearly established at the time the alleged incident occurred. *See Freeman v. Blair*, 862 F. 2d 1330, 1332 (8th Cir. 1988) (law making retaliation for the exercise of a constitutional right actionable under § 1983 has been established for some time, and an objectively reasonable official could not fail to know of it). Viewing Plaintiff's allegations as true and in a light most favorable to him, the Court concludes that a reasonable prison official would have known his retaliatory actions constituted a violation of Plaintiff's First Amendment rights. Accordingly, Defendants are not entitled to dismissal based on qualified immunity at the pleading stage on Plaintiff's § 1983 retaliation claim.

### V. Sovereign Immunity

Defendants argue that Plaintiff's official capacity claims fail because the state of Missouri is not a "person" for purposes of § 1983, and even if the suit could proceed against the state, it is entitled to Eleventh Amendment sovereign immunity. (Doc. 22 at 10).

It is well-settled that the Eleventh Amendment bars § 1983 claims against states and their agencies. *See Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (citations omitted). Section 1983 damages claims against individual defendants acting in their official capacities are likewise barred, either by the Eleventh Amendment, or because in these capacities they are not "persons" within the meaning of § 1983. *Id*. at 754 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)). Nevertheless, plaintiffs may seek prospective injunctive relief against a state, its agencies, and its officers when sued in their official capacities to prevent

continuing or future violations of the Constitution without running afoul of the Eleventh Amendment. *See Heartland Academy Community Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005); *Papasan v. Allain*, 478 U.S. 265, 278 (1986); *see also Treleven v. University of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996) (state officials acting in their official capacities are § 1983 "persons" when sued for prospective injunctive relief and Eleventh Amendment does not bar such relief).

In this case, Plaintiff seeks both damages and injunctive relief. Plaintiff has named all the Defendants in their official capacities because he seeks prospective injunctive relief to prevent future intimidation and harassment. He also seeks an order commanding Defendants to make available a confidential space for legal calls and visits, and an injunction barring Defendants from retaliating against him for the exercise of his legal rights. To the extent that the complaint could be read to assert a claim for monetary damages against Defendants in their official capacities, those claims are barred by Eleventh Amendment immunity. However, Plaintiff's claims for prospective injunctive relief against all Defendants in their official capacities are not barred by the Eleventh Amendment. Additionally, the Eleventh Amendment does not bar Plaintiff's damages claims against Defendants Pierce, Mundwiller, Diener and Rajput in their individual capacities. *Murphy*, 127 F.3d at 754.

### VI. State Constitutional Claim

Plaintiff also asserts that Defendants' alleged retaliation against him violates his right to free speech under Article I, Section 8, of Missouri's Constitution. Defendants argue that Plaintiff's claims arising under the Missouri Constitution should be dismissed because there is no private cause of action available to Plaintiff under this Section of the Missouri Constitution.

The Missouri General Assembly has not enacted any law similar to 42 U.S.C. § 1983 that gives citizens a private cause of action to sue state actors for violations of the Missouri

Constitution. *See, e.g., Moody v. Hicks*, 956 S.W.2d 398, 402 (Mo.Ct. App. 1997). As a result, Plaintiff has no cause of action to sue for a violation of Article I, Section 8 of the Missouri Constitution, and Count II of Plaintiff's amended complaint will be dismissed for failure to state a claim upon which relief can be granted. Accordingly, the Court need not consider Defendants' alternative argument that Plaintiff's state constitutional claims are barred by Missouri's doctrine of official immunity.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED in part and DENIED in part** as set forth more fully above. (Doc. 17).

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of June, 2018.